**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

RODAMEL MARTINEZ,

  Plaintiff,

v.                                                              CASE NO.:

TRANS UNION LLC, SECURITY CREDIT     **JURY TRIAL DEMANDED**
SERVICES, LLC, LVNV FUNDING LLC,
CREDIT ONE BANK, N.A., and WEBBANK
CORPORATION,

  Defendants.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, RODAMEL MARTINEZ (hereinafter "Plaintiff"), by and through the undersigned counsel, sues Defendant, TRANS UNION, LLC (hereinafter "Trans Union" and/or "CRA"), SECURITY CREDIT SERVICES, LLC (hereinafter "Security Credit Services" or "furnisher"), CREDIT ONE BANK, N.A. (hereinafter "Credit One" or "furnisher"), WEBBANK CORPORATION (hereinafter "Webbank"), (collectively hereinafter "Defendants") and in support thereof respectfully alleges violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

**PRELIMINARY STATEMENT**

1.     This is an action for actual damages, statutory damages, punitive damages, costs, and attorney's fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

2.     Today in America there are three major consumer reporting agencies: Equifax, Trans Union, and Experian.

3.     Consumer reporting agencies that create consumer reports, like Equifax, Experian, and Trans Union, are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities like Credit One Bank, particularly where a consumer makes a dispute about information reported.

4.     When a consumer, like Plaintiff, disputes information through the agencies, those disputes are transmitted to the party furnishing the information. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

5.     The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

## JURISDICTION

6.     The jurisdiction for this Court is conferred by 15 U.S.C. § 1681 (p) and 28 U.S.C. 1367.

7.     The Plaintiff is a natural person and resident of Hillsborough County, Florida. He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

8.     The Plaintiff is a natural person and resident of Hillsborough County, within the State of Florida. She is a "consumer" as defined by 15 U.S.C. § 1681a(c).

9.     Trans Union LLC is a corporation headquartered in the State of Illinois, authorized to conduct business in the State of Florida through its registered agent, The Prentice-Hall Corporation System, Inc. located at 1201 Hays Street, Tallahassee, Florida 32301.

10.     Trans Union LLC is a "consumer reporting agency," as defined in 15 USC § 1681(f).   is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

11.     Trans Union LLC disburses such consumer reports to third parties under contract for monetary compensation.

12.     Security Credit Services, LLC is headquartered in the State of Mississippi, authorized to conduct business in the State of Florida through its registered agent, Corporation Service Company located at 1201 Hays Street, Tallahassee, Florida 32301.

13.     LVNV Funding LLC is headquartered in the State of Nevada, authorized to conduct business in the State of Florida through its registered agent, Corporation Service Company located at 1201 Hays Street, Tallahassee, Florida 32301.

14.     Credit One Bank, N.A. is headquartered in the State of Nevada located at 6801 South Cimarron, Las Vegas, Nevada 89113 and conducts business in the State of Florida.

15.     Webbank Corporation is headquartered in the State of Utah authorized to do business in the State of Florida through its registered agent, Corporation Service Company located at 1201 Hays Street, Tallahassee, Florida 32301.

## FACTUAL ALLEGATIONS

16.     Plaintiff is a natural person who is alleged to owe several debts but does not.

17.     In or about September of 2018, Plaintiff obtained his Trans Union credit report. Upon reviewing his report, he noticed the erroneous reporting regarding the following accounts:

      I.    Capital One Bank (USA), N.A.

     II.    Credit One Bank, N.A.

III.    Jefferson Capital Services, LLC

IV.    First Premier Bank

V.    Security Credit Services, LLC (2 accounts)

VI.    TD Bank/Target Credit

VII.    Synchrony Bank/TJ Maxx

VIII.    Webbank/Freshstart

IX.    Applied Bank

18.    In November of 2018, Plaintiff disputed the erroneous accounts listed above with all three Credit Reporting Agencies aforementioned.

19.    Upon information and belief, Trans Union notified the furnishers of the accounts on Plaintiff's dispute. At this time, Plaintiff had directly communicated with several of the furnishers and had disputed the fraud directly to the furnishers.

20.    The furnishers refused to acknowledge that the accounts did not belong to the Plaintiff and to correct the erroneous information and/or Trans Union ignored their instructions to delete the fraudulent accounts. Trans Union failed to do any independent investigation regarding the fraudulent accounts.

21.    Inexplicably on December 24, 2018, Defendant responded to Plaintiff's dispute by ignoring all disputed accounts except for a hard inquiry from Capital One Bank USA NA – which Trans Union "DELETED". Trans Union was on notice of fraud occurring within Plaintiff's credit report but failed to acknowledge or to correct the other inaccurate accounts.

22.    Subsequently, on or about January 4, 2019, Plaintiff filed a Police report with the Hillsborough County Sherriff's Office notifying them of the fraudulent activity within his Credit Reports. The HCSO provided him with report number HS 2019-8988.

23.     Continuing into January of 2019, Plaintiff again disputed with Defendant all the inaccurate accounts.   An ACDV was sent from Trans Union to TD Bank USA/Target. This account was originally disputed by Plaintiff in earlier disputes.   On January 14, 2019, TD Bank responded with "DELETE FOR FRAUD".   Trans Union continued to be aware that Plaintiff was the victim of identity theft.    Inexplicably, Defendant continued to report the other erroneous accounts after the two disputes.

24.     On February 13, 2019, Plaintiff requested "all information" from Defendant and provided a copy of his Driver's License for further identification.

25.     On February 26, 2019, Defendant produced Plaintiff's credit report showing the following accounts with derogatory remarks only continuing to damage Plaintiff's credit further:

"Maximum Delinquency":

I.      Applied Bank - 435583100890****

   a.   "Maximum delinquency of 120 days in 12/2018 and in 02/2019"

II.     Capital One Bank (USA), N.A. - 517805811429****

   a.   "Maximum delinquency of 120 days in 12/2018 and in 01/2019"

III.    Credit One Bank, N.A. -  444796239953****

   a.   "Maximum delinquency of 120 days in 11/2018 and in 01/2019"

IV.     First Premier Bank - 517800674790****

   a.   "Maximum delinquency of 120 days in 10/2018"

"In collection":

V.      Jefferson Capital Services, LLC - 306288830****

VI.     Security Credit Services, LLC - 26322**

VII.    Security Credit Services, LLC - 26270**

VIII.    Synchrony Bank/TJ Maxx - 604585104930****

IX.     Webbank/Freshstart - 636992032199****

26.     Notably, Trans Union continued to report all the fraudulent accounts including the Capital One Bank USA NA delinquent account.  The account was opened on June 13, 2018. Trans Union had determined that the hard inquiry was fraudulent and had deleted the inquiry for fraud (as described in Paragraph 17 of this Complaint).  Somehow, knowing that Plaintiff did not provide permission for the inquiry, Trans Union continued to report the fraudulent account resulting from the fraudulent application.

27.     Due to the continued fraud, on or about June 20, 2019, Plaintiff filed another Police Report with the Hillsborough County Sherriff's Office. In this report, Plaintiff provided HCSO with all documentation regarding the fraud. The HCSO provided him with another report number HS 2019-433363.

28.     On June 30, 2019, Defendant sent Plaintiff written correspondence stating they have added a fraud alert to Plaintiff's credit report and already sent a notice to Equifax and Experian telling them about the alert.

29.     On or around August 12, 2019, Plaintiff wrote yet another letter to Defendant to dispute the erroneous accounts. In this aforementioned letter, Plaintiff further explained in detail why the accounts did not belong to him and how they were hurting his credit. Plaintiff indicated in the dispute letter that he did not apply nor did he opened or use the accounts. Plaintiff also indicated that he never received correspondence of the accounts to his address. Plaintiff provided his social security number as well as current and previous home addresses. Plaintiff also disputed an address on his report that he never resided at. Plaintiff provided extensive information on each disputed account being reported. He provided phone numbers, dates the accounts were allegedly

opened and being used, as well as details of communications directly with the furnishers disputing the accounts.

30.     Further, in Plaintiff's dispute to Defendant, Plaintiff provided the HCSO police report numbers and the investigating deputies' names and phone numbers.  Trans Union made no efforts to obtain the police reports or to speak with the deputies involved in the investigation.

31.     On August 29, 2019, Defendant responded to Plaintiff's dispute continuing to update the maximum delinquency remarks on each disputed account along with additional fraudulent accounts being reported. It appeared the accounts previously disputed by Plaintiff in collections were sold off to other debt collectors who were now also reporting on Plaintiff's credit report. These additional accounts reflected as:

    a.  LVNV Funding LLC 444796239953**** for Credit One Bank NA

    b.  LVNV Funding LLC 636992032199**** for Webbank Fingerhut Freshstart

32.     Trans Union communicated the dispute to Applied Bank and the response indicated "Deleted per dispute rules".

33.     Trans Union sent another ACDV to Synchrony for Synchrony Bank/TJ Maxx - 604585104930**.  Synchrony responded "DELETE ACCOUNT FOR FRAUD".  Again, this is one of the same accounts Plaintiff had been disputing for a year with Trans Union.

34.     Trans Union sent an ACDV to all the dispute furnishers notifying them of the activity.

35.     After receiving the ACDV from Trans Union, Security Credit Services (2 accounts) responded, "verified as accurate and updated".

36.     Trans Union sent an ACDV to Credit One who also responded by verifying as accurate. Plaintiff had repeatedly communicated with Credit One disputing this account yet Trans Union and Credit One both failed to do any independent investigation about the account.

37.     Despite Credit One receiving the ACDV along with the disputes by Plaintiff, Credit One sold the alleged debt to LVNV.

38.     An ACDV from Trans Union was also sent to Webbank/Freshstart. Even after receiving the ACDV, Webbank/Freshstart verified the fraudulent accounts as "accurate" and sold the debt to LVNV.

39.     LVNV purchased two of Plaintiff's alleged debts and failed to do any independent investigation as they responded both ACDV's from Trans Unions. Instead, they responded to the ACDV's as "Verified as Accurate".

40.     Trans Union responded to Plaintiff's latest dispute by deleting Applied Bank and SYNCB/TJX.  Trans Union verified (per the furnishers), First Premier Bank, Credit One Bank, LVNV, Security Credit Services (2 accounts), and Webbank/Freshstart. All the verified accounts included derogatory credit history seriously hurting Plaintiff's ability to obtain credit.

41.     Plaintiff continued to dispute with Trans Union and on November 25, 2019, Plaintiff filed an online dispute for the remaining fraudulent accounts.

42.     Plaintiff continued to try and go through the process of disputing these accounts with the CRAs. Plaintiff wrote another dispute to Defendant on or around March 27, 2020. This letter included the disputed accounts which were:

      I.     Capital One Bank (USA), N.A.- 517805811429****

     II.     Credit One Bank, N.A.- 444796239953****

    III.     Jefferson Capital Services, LLC - 306288830****

IV.   First Premier Bank - 517800674790****

V.   Security Credit Services, LLC - 26322**

VI.   Security Credit Services, LLC - 26270**

VII.   Synchrony Bank/TJ Maxx - 604585104930****

VIII.   Webbank/Freshstart - 636992032199****

IX.   LVNV Funding LLC 444776239953**** - Credit One Bank NA

X.   LVNV Funding LLC 636992032199**** - Webbank Fingerhut Freshstart

43.   Plaintiff received dispute results from Trans Union on May 27, 2020 deleting some of accounts Plaintiff had been disputing for almost 18 months:

XI.   First Premier Bank - 517800674790**** " Delete, Presumed Fraud"

XII.   Webbank/Freshstart - 636992032199**** " Delete, Presumed Fraud"

XIII.   LVNV Funding LLC 636992032199**** " Delete, Presumed Fraud"

44.   Two days later, on May 29, 2020, plaintiff received another response from Trans Union stating two additional accounts were deleted:

XIV.   Credit One Bank, N.A.- 444776239953**** " Delete, Presumed Fraud"

XV.   LVNV Funding LLC 444776239953**** " Delete, Presumed Fraud"

45.   The accounts were the result of negligent mishandling by Credit One Bank, N.A., First Premier Bank, Security Credit Services, LLC, and LVNV Funding for Credit One Bank, N.A., and/or failure by Trans Union to investigate all the facts which the Plaintiff explained in his dispute letters.  Plaintiff had been disputing these fraudulent accounts for 18 months before the accounts were deleted.

46.     Trans Union kept the erroneous accounts on Plaintiff's credit report despite being notified that Plaintiff was not the debtor and a victim of a mixed file, negligence and/or identity theft.

47.     As of June 16, 2020, Trans Union has ensured Plaintiff's report was clear after being given ample notice of their erroneous mistakes.  Plaintiff does not have a single negative account in his Trans Union report as he has never been late.  All the negative accounts were the result of fraud and Trans Union's reckless procedures allowing fraudulent accounts.

48.     Trans Union has been aware of the identity theft and chose to delete several fraudulent accounts and requests for credit history but chose not to believe Plaintiff regarding the remaining fraudulent accounts.

49.     As a result of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

    i.    Stress associated with having to use co-applicants in order to get any credit;

    ii.    Plaintiff was denied financing due to this inaccurate credit reporting by Rooms to Go;  Trans union, during the times of Plaintiff's disputes provided inaccurate credit reports to Synchrony and Capital One Bank USA.

    iii.    Monies lost by attempting to fix his credit;

    iv.    Loss of time attempting to cure the error;

    v.    Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life;

    vi.    Plaintiff's inaccurate Trans Union report was provided to at least 23 entities during the time of the disputes.

    vii.    Plaintiff is being forced to rent and is unable to purchase a home due to the inaccuracies reported by Trans Union.  Plaintiff has disputed to Trans Union on at least three different occasions these inaccuracies and for over a 14 month period with no results from Trans Union to reflect any reasonable investigation.

    viii.    Plaintiff also was forced to pay a higher premium in his car insurance due to the erroneous credit reporting by Trans Union.

50.     All conditions precedent to the filing of this action has occurred.

## **CAUSES OF ACTION**

<u>**COUNT I**</u>
**(Violation of 15 U.S.C. § 1681e(b) – Trans Union LLC)**

51.     Plaintiff re-alleges and incorporates paragraphs one (1) through fifty (50) above as if fully set out herein.

52.     Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.  Plaintiff has been to the police twice and has disputed these inaccurate accounts for over 14 months. Trans Union is aware that the client is the victim of identity theft and has deleted a few accounts but refuses to correct the other ones.

53.     As a result of this conduct, action and inaction of Trans Union, the Plaintiff suffered damage by stress associated with a reduction in available credit and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials.

54.     Trans Union's conduct, action, and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n. In the alternative, if Trans Union was negligent, Plaintiff is entitled to recover under 15 USC § 1681o.  Trans Union was made aware of the identity theft and allowed for new accounts to open without Plaintiff's permission.  Trans Union chose to believe only the furnishers despite clear proof from Plaintiff that the accounts did not belong to him.

55.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, TRANS UNION LLC, for statutory damages, punitive damages,

actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

## COUNT II
### (Violation of 15 U.S.C. § 1681i – Trans Union LLC)

56.     Plaintiff re-alleges and incorporates paragraphs one (1) through fifty (50) above as if fully set out herein.

57.     Trans Union violated 15 U.S.C. § 1681i by failing to delete inaccurate information in the Plaintiff's credit file after receiving notice of such inaccuracies, by failing to conduct a lawful reinvestigation, by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and by relying upon verification from a source it has to know is unreliable.  Inexplicably, after two police reports, numerous disputes, and over 18 months, Trans Union refuses to do more than to parrot back the results from the Furnishers.  Plaintiff had informed Trans Union from the beginning that he is the victim of identity theft. Simply asking the furnishers to verify the name, social security and date of birth is not sufficient when Plaintiff has told Trans Union that the criminal has that information.  Trans Union often failed to address some of the individual account disputes in violation of the FCRA.

58.     Trans Union's conduct, action, and inaction as willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n. In the alternative, if Trans Union was negligent, Plaintiff is entitled to recover under 15 USC § 1681o. Trans Union took no independent action to investigate the dispute. Trans Union inexplicably failed to investigate Plaintiff's first, second and third dispute despite having all the necessary information.

59.    The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**WHEREFORE** the Plaintiff demands judgment and compensatory, statutory, and punitive damages against Defendant, TRANS UNION LLC, jointly and severally; for his attorney's fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

<u>**Count II**</u>
**Violations of FCRA § 1681s-2(b)(1)(A) and (B) – Security Credit Services, LLC**

60.    Plaintiff re-alleges and fully incorporates paragraphs one (1) through fifty (50) above as is fully stated herein.

61.    On at least one occasion within the past two years, by example only and without limitation, Security Credit Services violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate the Plaintiff's disputes.

62.    On one or more occasions within the past two years, by example only and without limitation, Security Credit Services violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

63.    When Plaintiff mailed his detailed, written disputes and enclosures to the CRAs, they used e-Oscar to transmit those disputes to Security Credit Services via ACDV forms

64.    The ACDV form is the method by which Security Credit Services has elected to receive consumer disputes pursuant to 15 U.S.C. §§ 1681i(a) and 1681s-2(b).

65.    Security Credit Services understood the nature of the Plaintiff's dispute when it received the ACDV from Experian, TransUnion and Equifax.

66.    When Security Credit Services received the ACDV from Experian, TransUnion and Equifax, it as well could have reviewed its own systems and previous communications with

the Plaintiff and discovered that Security Credit Services in fact had connected Plaintiff to an account with a company at which he has never had service with, and the debt for which should not have made it onto Plaintiff's consumer report.

67.     Notwithstanding the above, discovery will show Security Credit Services follows a standard and systemically unlawful process when it receives the ACDV dispute. Basically, all Security Credit Services does is review its own internal computer screen with basic data for the account and repeat back to the ACDV system the same information Security Credit Services already had reported to the CRAs. Security Credit Services at all times had possession of the application, identification of the buyer, and additional information that could have easily discovered the fraud.

68.     When Security Credit Services receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

69.     As a result of Security Credit Service's violations of 15 U.S.C. § 1681s-2(b)(1)(A) and (B), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

70.     The violations by Security Credit Services were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Security Credit Services was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

71.     The law in this District, the Eleventh Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a CRA.

72.     Security Credit Services was aware of the FCRA decisions by the Eleventh Circuit setting out furnishers' obligations to reasonably investigate disputes when it followed the ACDV procedures used regarding the Plaintiff's dispute.

73.     Discovery will confirm that the procedures followed regarding the FCRA dispute through e-Oscar were the procedures that Security Credit Services intended its employees or agents to follow.

74.     Because of Security Credit Service's failures in investigating Plaintiff's disputes, Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Security Credit Services in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, SECURITY CREDIT SERVICES, LLC, for statutory damages, punitive damages, actual damages, costs, interest, attorneys' fees, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

### Count III
### Violations of FCRA § 1681s-2(b)(1)(A) and (B) – LVNV Funding LLC

75.     Plaintiff re-alleges and fully incorporates paragraphs one (1) through fifty (50) above as is fully stated herein.

76.     On at least one occasion within the past two years, by example only and without limitation, LVNV violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate the Plaintiff's disputes.

77.     On one or more occasions within the past two years, by example only and without limitation, LVNV violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

78.     When Plaintiff mailed his detailed, written disputes and enclosures to the CRAs, they used e-Oscar to transmit those disputes to LVNV via ACDV forms.

79.     The ACDV form is the method by which LVNV has elected to receive consumer disputes pursuant to 15 U.S.C. §§ 1681i(a) and 1681s-2(b).

80.     LVNV understood the nature of the Plaintiff's dispute when it received the ACDV from Experian, TransUnion and Equifax.

81.     When LVNV received the ACDV from Experian, TransUnion and Equifax, it as well could have reviewed its own systems and previous communications with the Plaintiff and discovered that LVNV in fact had connected Plaintiff to an account with a company at which he has never had service with, and the debt for which should not have made it onto Plaintiff's consumer report.

82.     Notwithstanding the above, discovery will show LVNV follows a standard and systemically unlawful process when it receives the ACDV dispute. Basically, all LVNV does is review its own internal computer screen with basic data for the account and repeat back to the ACDV system the same information LVNV already had reported to the CRAs. LVNV at all times had possession of the application, identification of the buyer, and additional information that could have easily discovered the fraud.

83.     When LVNV receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

84.     As a result of LVNV's violations of 15 U.S.C. § 1681s-2(b)(1)(A) and (B), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

85.     The violations by LVNV were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, LVNV was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

86.     The law in this District, the Eleventh Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a CRA.

87.     LVNV was aware of the FCRA decisions by the Eleventh Circuit setting out furnishers' obligations to reasonably investigate disputes when it followed the ACDV procedures used regarding the Plaintiff's dispute.

88.     Discovery will confirm that the procedures followed regarding the FCRA dispute through e-Oscar were the procedures that LVNV intended its employees or agents to follow.

89.     Because of LVNV's failures in investigating Plaintiff's disputes, Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from LVNV in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, LVNV FUNDING LLC, for statutory damages, punitive damages, actual damages, costs, interest, attorneys' fees, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

### Count IV
### Violations of FCRA § 1681s-2(b)(1)(A) and (B) – Credit One Bank, N.A.

90.     Plaintiff re-alleges and fully incorporates paragraphs one (1) through fifty (50) above as is fully stated herein.

91.     On at least one occasion within the past two years, by example only and without limitation, Credit One violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate the Plaintiff's disputes.

92.     On one or more occasions within the past two years, by example only and without limitation, Credit One violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

93.     When Plaintiff mailed his detailed, written disputes and enclosures to the CRAs, they used e-Oscar to transmit those disputes to Credit One via ACDV forms.

94.     The ACDV form is the method by which Credit One has elected to receive consumer disputes pursuant to 15 U.S.C. §§ 1681i(a) and 1681s-2(b).

95.     Credit One understood the nature of the Plaintiff's dispute when it received the ACDV from Experian, TransUnion and Equifax.

96.     When Credit One received the ACDV from Experian, TransUnion and Equifax, it as well could have reviewed its own systems and previous communications with the Plaintiff and discovered that Credit One in fact had connected Plaintiff to an account with a company at which he has never had service with, and the debt for which should not have made it onto Plaintiff's consumer report.

97.     Notwithstanding the above, discovery will show Credit One follows a standard and systemically unlawful process when it receives the ACDV dispute. Basically, all Credit One does is review its own internal computer screen with basic data for the account and repeat back to the ACDV system the same information Credit One already had reported to the CRAs. Credit

18

One at all times had possession of the application, identification of the buyer, and additional information that could have easily discovered the fraud.

98.    When Credit One receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

99.    As a result of Credit One's violations of 15 U.S.C. § 1681s-2(b)(1)(A) and (B), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

100.    The violations by Credit One were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Credit One was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

101.    The law in this District, the Eleventh Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a CRA.

102.    Credit One was aware of the FCRA decisions by the Eleventh Circuit setting out furnishers' obligations to reasonably investigate disputes when it followed the ACDV procedures used regarding the Plaintiff's dispute.

103.    Discovery will confirm that the procedures followed regarding the FCRA dispute through e-Oscar were the procedures that Credit One intended its employees or agents to follow.

104.    Because of Credit One's failures in investigating Plaintiff's disputes, Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Credit One in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, CREDIT ONE BANK, N.A., for statutory damages, punitive damages, actual damages, costs, interest, attorneys' fees, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

<u>Count V</u>
**Violations of FCRA § 1681s-2(b)(1)(A) and (B) – Webbank Corporation**

105.   Plaintiff re-alleges and fully incorporates paragraphs one (1) through fifty (50) above as is fully stated herein.

106.   On at least one occasion within the past two years, by example only and without limitation, Webbank violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate the Plaintiff's disputes.

107.   On one or more occasions within the past two years, by example only and without limitation, Webbank violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

108.   When Plaintiff mailed his detailed, written disputes and enclosures to the CRAs, they used e-Oscar to transmit those disputes to Webbank via ACDV forms.

109.   The ACDV form is the method by which Webbank has elected to receive consumer disputes pursuant to 15 U.S.C. §§ 1681i(a) and 1681s-2(b).

110.   Webbank understood the nature of the Plaintiff's dispute when it received the ACDV from Experian, TransUnion and Equifax.

111.   When Webbank received the ACDV from Experian, TransUnion and Equifax, it as well could have reviewed its own systems and previous communications with the Plaintiff and discovered that Webbank in fact had connected Plaintiff to an account with a company at which

he has never had service with, and the debt for which should not have made it onto Plaintiff's consumer report.

112.   Notwithstanding the above, discovery will show Webbank follows a standard and systemically unlawful process when it receives the ACDV dispute. Basically, all Webbank does is review its own internal computer screen with basic data for the account and repeat back to the ACDV system the same information Webbank already had reported to the CRAs. Webbank at all times had possession of the application, identification of the buyer, and additional information that could have easily discovered the fraud.

113.   When Webbank receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

114.   As a result of Webbank's violations of 15 U.S.C. § 1681s-2(b)(1)(A) and (B), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

115.   The violations by Webbank were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Webbank was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

116.   The law in this District, the Eleventh Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a CRA.

117.   Webbank was aware of the FCRA decisions by the Eleventh Circuit setting out furnishers' obligations to reasonably investigate disputes when it followed the ACDV procedures used regarding the Plaintiff's dispute.

118.     Discovery will confirm that the procedures followed regarding the FCRA dispute through e-Oscar were the procedures that Webbank intended its employees or agents to follow.

119.     Because of Webbank's failures in investigating Plaintiff's disputes, Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Webbank in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, WEBBANK CORPORATION, for statutory damages, punitive damages, actual damages, costs, interest, attorneys' fees, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

Respectfully submitted,

*/s/ Octavio "Tav" Gomez*
Octavio "Tav" Gomez, Esquire
Florida Bar No.: 0338620
Morgan & Morgan, Tampa, P.A.
201 N. Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 983-2889
Primary Email: TGomez@ForThePeople.com
Secondary Email: DGagliano@ForThePeople.com
*Attorney for Plaintiff*